**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| PATRICK WHEELER, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>       v.<br><br>FROZEN FOOD EXPRESS INDUSTRIES, INC, JERRY T. ARMSTRONG, W. MIKE BAGGETT, BRIAN R. BLACKMARR, BARRETT D. CLARK, KEVIN K. KILPATRICK, T. MICHAEL O'CONNOR, STONEY M. STUBBS, JR., S. RUSSELL STUBBS, JOHN T. HICKERSON, DUFF BROTHERS CAPITAL CORPORATION, and DUFF BROTHERS SUBSIDIARY, INC.<br><br>                         Defendants. | Civil Action No. 3:13-CV-2823<br><br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Patrick Wheeler ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action on behalf of the public stockholders of Frozen Food Express Industries, Inc. ("FFE" or the "Company") against FFE's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Company to Duff Brothers Capital Corporation ("Duff Brothers") for inadequate consideration, without an adequate sales process.

2.      FFE describes itself as one of the leading temperature-controlled truckload and less-than-truckload carriers in the United States with core operations in the transport of temperature-controlled products and perishable goods including food, health care and confectionery products. Service is offered in over-the-road and intermodal modes for temperature-controlled truckload and less-than-truckload, as well as dry truckload on a non-dedicated fleet basis. The Company also provides bulk tank water transportation, brokerage/logistics and dedicated services to its customers.

3.      On July 16, 2013, Duff Brothers and the Company announced a definitive agreement under which Duff Brothers, through its wholly owned subsidiary, Duff Brothers Subsidiary, Inc. ("Merger Sub"), will commence a tender offer to acquire all of the outstanding shares of FFE for $1.50 per share in cash (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $38.2 million in equity value and was unanimously approved by the Board.  The Board has breached its fiduciary duties by agreeing to the Proposed Transaction for grossly inadequate consideration.  As described in more detail below, given FFE's recent strong performance as well as the Company's positioning for future growth, the consideration shareholders will receive is inadequate and undervalues the Company.

4.      Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company. Specifically, pursuant to the agreement and plan of merger dated July 12, 2013 (the "Merger Agreement"), defendants agreed to: (i) a limited 10 day "go-shop" provision after which

a strict no-solicitation provision becomes effective preventing the Company from soliciting other potential acquirers or even in continuing discussions and negotiations with potential acquirers; (ii) a provision that provides Duff Brothers with three (3) business days to match any competing proposal in the event one is made; and (iii) a provision that requires the Company to pay Duff Brothers a termination fee of $1.15 million in order to enter into a transaction with a superior bidder. These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of FFE.

5.      The Individual Defendants have breached their fiduciary duties of loyalty and due care, and Duff Brothers and Merger Sub have aided and abetted such breaches by FFE's officers and directors. Plaintiff seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

7.      Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.  One or more of the defendants either resides in or maintains executive offices in this district, and

defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of FFE common stock.

9.      FFE is a corporation incorporated under the laws of the State of Texas. The Company maintains its principal executive offices at 1145 Empire Central Place, Dallas Texas 75247-4305.    FEE may be served with process by and through its registered agent, CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 7501.

10.     Defendant S. Russell Stubbs ("R. Stubbs") is the President and Chief Executive Officer ("CEO") of the Company and has served in those positions since March 1, 2011.  Prior to that, R. Stubbs served as President beginning on January 15, 2010. Defendant R, Stubbs has been a director of the Company since 2005.   Upon information and belief, defendant R. Stubbs is a citizen of Texas.  R. Stubbs may be served with process at 158 Jellico Circle, Southlake, TX 76092-6804.

11.     Defendant Stoney M. Stubbs, Jr. ("S. Stubbs") has been a director of the Company since 1980.  Defendant S. Stubbs has been the non-executive Chairman of the Board since March 1, 2011 and previously served as Chairman of the Board and CEO beginning on January 15, 2010.  S. Stubbs previously served as Chairman of the Board, President, and Chief Executive Officer since 1980.   Upon information and belief,

defendant S. Stubbs is a citizen of Texas.  S. Stubbs may be served with process at FEE's principal place of business, 1145 Empire Central Place, Dallas Texas 75247-4305.

12.     Defendant T. Michael O'Connor ("O'Connor") has been a director of the Company since 1992. Defendant O'Connor is a member of the Board's Audit Committee. Upon information and belief, defendant O'Connor is a citizen of Texas.  O'Connor may be served with process at 507 N Victoria Street, Victoria, TX 77901-6352.

13.     Defendant Jerry T. Armstrong ("Armstrong") has been a director of the Company since 2003. Defendant Armstrong serves as the Chair of the Audit Committee. According to the definitive Proxy Statement, filed with the United States Securities and Exchange Committee ("SEC") on April 17, 2013 (the "April Proxy"), Armstrong is an Audit Committee financial expert.  Upon information and belief, defendant Armstrong is a citizen of Washington.  Armstrong may be served with process at 14114 Dallas Pkwy, Suite 460, Dallas, TX 75254-1365.

14.     Defendant Barrett D. Clark ("Clark") has been a director of the Company since 2007. Defendant Clark is a member of both the Audit Committee and the Nominating and Corporate Governance Committee.   Upon information and belief, defendant Clark is a citizen of Texas.  Clark may be served with process at 10116 Estate Ln, Dallas, TX 75238-2135.

15.     Defendant Kevin M. Kilpatrick ("Kilpatrick") has been a director of the Company since 2009. Defendant Kilpatrick is a member of the Compensation Committee.   Upon information and belief, defendant Kilpatrick is a citizen of Texas.

Kilpatrick may be served with process at 3116 Tanglewood Trail, Fort Worth, TX 76109-2012.

16.     Defendant Brian R. Blackmarr ("Blackmarr") has been a director of the Company since 1990. Defendant Blackmarr is the Chairman of the Compensation Committee and is a member of the Nominating and Corporate Governance Committee. Upon information and belief, defendant Blackmarr is a citizen of Texas. Defendant Blackmarr may be served with process at 4433 Belclaire Avenue, Dallas, TX 75205-3036.

17.     Defendant W. Mike Baggett ("Baggett") has been a director of the Company since 1998. Defendant Baggett is the Chairman of the Nominating and Corporate Governance Committee and is a member of the Audit Committee and compensation Committee.  Upon information and belief, defendant Baggett is a citizen of Texas.  Baggett may be served with process at 10116 Estate Lane, Dallas, TX 75238-2135.

18.     Defendant John T. Hickerson ("Hickerson") has been a director of the Company since 2009. Defendant Hickerson has been the Company's Executive Vice President and Chief Operating Officer since January 15, 2010 and previously served as senior Vice President and Chief Marketing Officer of the Company since February 25, 2009.  Upon information and belief, defendant Hickman is a citizen of Texas. Hickman may be served with process at 2221 Knob Hill Drive, Corinth, TX 76210-1921.

19.     Defendants referenced in ¶¶ 10 through 18 are collectively referred to as Individual Defendants and/or the Board.

20.     Defendant Duff Brothers is a Texas corporation.  Duff Brothers is wholly owned by Thomas and James Duff, who also indirectly owns KLLM Transport Services, LLC.  Defendant Duff Brothers may be served with process by and through its registered agent, Cameron Dee Sewell, at 2100 Ross Avenue, Suite 2600, Dallas, TX 75201.

21.     Defendant Merger Sub is a Texas corporation wholly owned by Duff Brothers that was created for the purposes of effectuating the Proposed Transaction. Defendant Merger Sub may be served with process by and through its registered agent, Cameron Dee Sewell, at 2100 Ross Avenue, Suite 2600, Dallas, TX 75201.

<u>**CLASS ACTION ALLEGATIONS**</u>

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of owners of FFE common stock as of July 15, 2013, the announcement of the Proposed Transaction (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

23.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Merger Agreement, as of July 10, 2013, the Company had 18,175,818 shares of common stock outstanding.  All members of the Class may be identified from records maintained by FFE or its transfer agent and may be

notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class, including, *inter alia*, the following:

     (i)     Whether the Individual Defendants breached their fiduciary duties of undivided loyalty or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

     (ii)     Whether the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonably available under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

     (iii)     Whether Duff Brothers and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

     (iv)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

25.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

26.     Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

28.     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

29.     Defendants have acted on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the Class as a whole.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *Company Background and its Poise for Growth*

30.     FFE describes itself as one of the leading temperature-controlled truckload ("TL") and less-than-truckload ("LTL") carriers in the United States with core operations in the transport of temperature-controlled products and perishable goods including food, health care and confectionery products. Service is offered in over-the-road and intermodal modes for temperature-controlled TL and LTL, as well as dry TL on a non-dedicated fleet basis. The Company provides bulk tank water transportation, brokerage/logistics and dedicated services to our customers. The Company is paid by the mile, the weight, or the number of trucks being utilized by its dedicated service

customers. The Company also receives revenue from fuel surcharges, loading and unloading service charges, equipment detention and other ancillary services.

31.     The trucking industry has faced difficulties caused by rising operating costs driven by increased, government regulation and recruiting and retention costs in connection with driver shortages.

32.     Despite industry challenges, the Company gained pricing yields throughout 2012 and positioned itself to improve them in 2013.

33.     One March 19, 2013, the Company issued a press release, which it filed with the SEC, announcing its financial and operating results for the quarter and year ended December 31, 2012 (the "March Press Release"). The March Press Release revealed that the Company's performance was improving despite difficult industry conditions.  The March Press Release described financial highlights, including:

- 4Q12 total operating revenue, net of fuel surcharges, was $78.4 million, a 5.6% increase versus 4Q11.

- 4Q12 operating loss of $4.4 million compared to a loss of $12.2 million in the same period of 2011.

- 2012 operating loss of $13.4 million, a $24.9 million improvement versus 2011.

- 2012 net loss per share of diluted common stock was ($0.84), compared to a net loss per diluted common share of ($2.08) in the same period of 2011.

34.     In the March Press Release, Defendant R. Stubbs commented on the financial results, noting that the Company was headed back to a growth trajectory with fourth quarter year-over-year revenue improvement and that the Company was positioned for profitability in 2013.  In part, the March Press Release stated:

"During 2012, we reduced our operating loss by approximately $25 million, **but just as important, with fourth quarter revenue growth of 6.8%, have put the top line back on a modest growth trajectory with our first quarter of year over year revenue growth in 2012**," said Russell Stubbs, President and Chief Executive Officer of the Company. . . **While we still have progress to make, we have successfully repositioned our Company, and I am confident that we have the right plan in place to restore the Company to profitability during 2013 and restore more meaningful profitability in the years to come.**"

(Emphasis added.)

35.     In the March Press Release, FFC also outlined its strategic plan to continue improving the Company. In its "Strategic Plan Update", the Company attributed the year-over-year decrease in operating expenses to its strategic decisions to exit profitable services and renew its fleet. The Company also noted that, since the fourth quarter of 2011, it began providing bulk tank water transportation and other services for the crude oil drilling industry. Further, the Company took steps to improve yields, including enhancing its inside sales efforts, securing new national accounts, and exiting lanes it considered to be less profitable. In part, the March Press Release stated:

"As a result of our actions and more favorable market conditions, the productivity of our fleet, as measured by revenue per truck per week, improved by nearly ten percentage points during 2012," commented Mr. Stubbs. "Of particular importance, the growth in our LTL business accelerated in the second half of the year, as customers increasingly recognized our differentiated value proposition of being the only asset based national temp controlled LTL network in existence in the US marketplace."

36.     On April 29, 2013, the Company issued a press release, which it filed with the SEC, announcing its financial and operating results for the first quarter ended March 31, 2013 (the "1Q 2013 Press Release"). The Company's turnaround into profitability was in full swing. In the 1Q 2013 Press Release, the Company saw continued

improvement with revenue growth and increased operating profitability. The  press release listed financial and operating result highlights which included:

- 1Q13 total operating revenue was $97.8 million, an 11.3% increase versus 1Q12

- 1Q13 revenue per truck per week increased 2.0% to $3,339, compared to $3,275 during 1Q12

- 1Q13 operating ratio improved to 104.1%, compared to 105.9% during 1Q12

- 1Q13 net loss improved to $3.3 million, compared to a $5.6 million loss during 1Q12

- 1Q13 net loss per share of diluted common stock was ($0.18), compared to ($0.32) during 1Q12

37.     Commenting on these results, Defendant R. Stubbs touted the Company's strategic plan as the driver of its growth. As the 1Q 2010 Press Release states:

"The execution of our strategic plan continues to deliver solid growth in revenue and improvement in operating profitability. During the first quarter, TL and LTL revenue grew 9.0% and 17.8% respectively, keeping pace with a 12.0% growth in the number of trucks in service. Volumes and pricing trends were favorable and were only slightly offset by an increase in the empty mile ratio," said Russell Stubbs, the Company's President and Chief Executive Officer. "Brokerage, logistics and equipment rental revenue was relatively unchanged from the prior year at approximately $7 million, as the effect of exiting an unprofitable dedicated service relationship last year was offset by a $0.6 increase in equipment rental revenue and slight growth in water transport services."

38.     The Company's efforts to improve its price yields has resulted in continued improvement in both LTL revenue per hundredweight and TL revenue per mile in the first quarter of 2013 versus the same quarter in 2012.

39.     Furthermore, although the industry faces a driver shortage, the Company increased its pool of owner operators and continues to produces drivers through its FFE

Driver Academy. As a result, the Company provided new, higher yield service offerings and improved its service standards across all operations. The Company saw double-digit increases in LTL tonnage and solid growth in TL billed miles.

***The Consideration Offered in the Proposed Transaction Is Inadequate***

40.     On March 15, 2013, Thomas Milton Duff reported a 5.84% stake in FFE and disclosed that on March 13, Duff Brothers and FFE entered into a confidentiality agreement pursuant to which the Company agreed to provide Duff Brothers certain confidential information concerning the Company's business.

41.     Shortly thereafter, FFC and Duff Brothers entered into the Merger Agreement.

42.     In a press release dated July 15, 2013, the Company announced that it had entered into a merger agreement with Duff Brothers pursuant to which Duff Brothers, through Merger Sub, will acquire all of the outstanding shares of the Company for $2.10 per share in cash.

43.     Given the Company's strengthening performance and its positioning for growth through the execution of its strategic plan, the Proposed Transaction consideration is inadequate and significantly undervalues the Company.

44.     The $2.10 Proposed Transaction is well below the Company's 52-week high share price of $2.50.

45.     Furthermore the Company's directors and executive officers are interested in effectuating the Proposed Transaction as they can "cash out" of their restricted stock awards. All outstanding and unvested restricted stock awards under the Company's

restricted stock plans may be tendered. All restricted stock awards, regardless of whether they are tendered, will automatically accelerate and vest immediately prior to the tender offer acceptance time.

46.     In addition, the Proposed Transaction consideration fails to adequately compensate FFE's shareholders for the significant synergies created by the merger. The Proposed Transaction is a strategic merger for Duff Brothers. James and Thomas Duff, the co-owners of Duff Brothers also indirectly own KLLM Transport Services, LLC ("KLLM"), which engages in the trucking and transportation-controlled carrier business and Southern Tire Mart, the largest independently owned commercial tire dealer and retread manufacturer in North America.

47.     Thomas Duff, on behalf of himself and James Duff acknowledged that the acquisition of FFE will lead to synergies and enhance KLLM's service. As described in the July 15, 2013 press release:

> On behalf of James and Thomas Duff, Mr. Thomas Duff stated that "We are excited about the opportunity to add another leader in the temperature controlled trucking industry to our family group of businesses. With the synergies and increased capacity that we can gain from the ownership of both FFE and KLLM, we know that we will be able to enhance the quality service that both companies have been providing to their customers. With our resources, we will be able to bring to FFE the financial strength that is needed to preserve and expand its operations for its valued employees for years to come. Overall, we see great things ahead for both of the companies."

48.     In a July 16, 2013 letter to employees, Jim Richards ("Richards"), the CEO of KLLM touted the benefits of the Duff Brothers acquisition of FFE, noting that

KLLM and FFE will become the "2nd largest control carrier in North America." In part, the letter stated:

> We are very excited about what this acquisition will accomplish for both KLLM and FFE. Together KLLM and FFE will become the 2nd largest control carrier in North America. This will enable us to provide our customers much more capacity at improved levels of service. Together, we will become a much stronger force in the Temperature Control Marketplace.

49.     Despite the significant synergies inherent in the transaction for Duff Brothers, however, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to Duff Brothers.

50.     Duff Brothers is seeking to acquire the Company at the most opportune time, at a time when the Company's stock is underpriced and is poised for tremendous growth.

### The Unreasonable Deal Protection Devices

51.     The Proposed Transaction is also unfair because as part of the Merger Agreement, Defendants agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

52.     The Merger Agreement permits the Company a limited "go-shop" period of only ten (10) business days to solicit alternate takeover proposals. Afterwards a strict "no-solicitation" provision becomes effective, prohibiting the Board from taking any meaningful action to ensure that they are in compliance with their fiduciary duties, including solicitation of alternative acquisition proposals or business combinations.

53.     Specifically, pursuant to § 6.3(b), the "no solicitation" provision bars the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Duff Brothers.

Section 6.3(b) states:

> From and after the Solicitation Period End-Date, and except as to any Excluded Party or as expressly permitted by Section 1.2(c) or Section 6.3(c), the Company shall not, and the Company shall cause any of its Subsidiaries not to, and the Company shall instruct its Representatives acting on its behalf not to, (i) solicit, initiate or knowingly facilitate or knowingly encourage any inquiries or indications of interest regarding, or the making of any proposal or offer that constitutes, or that would reasonably be expected to lead to, a Takeover Proposal; (ii) enter into or participate in any discussions (other than to state that the Company is not permitted to have discussions) with any Person that has made (A) a Takeover Proposal, with respect to such Takeover Proposal, or (B) an inquiry or indication of interest that could reasonably be expected to lead to a Takeover Proposal, with respect to such Takeover Proposal; (iii) approve, endorse or recommend any Takeover Proposal; or (iv) enter into any letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or similar document or any Contract contemplating or otherwise relating to any Takeover Transaction

54.     Furthermore, with limited exception, after the 10 day go-shop period expires, § 6.3(e) requires the Company to immediately cease and cause to be terminated any existing discussions with potential alternative acquirers concerning a takeover proposal.

55.     The Merger Agreement also contains a "matching rights" provision, whereby the Company must promptly notify Duff Brothers should it receive an unsolicited competing acquisition proposal. Pursuant to § 6.3(d) of the Merger Agreement, the Company must notify Duff Brothers of the bidder's identity and the terms of the bidder's offer. Thereafter, if the Board determines that the competing acquisition

proposal constitutes a "Superior Proposal," § 6.3(c) requires the Board grant Parent three (3) business days to amend the terms of the Merger Agreement to so that the alternative acquisition proposal would no longer constitute a "Superior Proposal."

56.     The effect of these provisions is to prevent the Board from entering discussions or negotiations with other potential purchasers unless the Board can first determine that the competing acquisition proposal is, in fact, "superior," and even then, the Company must give Duff Brothers three (3) business days to match the competing acquisition proposal. This severely limits the opportunity for a potential purchaser to emerge, and severely limits the ability of the Board from properly exercising their fiduciary duties.

57.     The Merger Agreement also provides that a termination fee of $1.15 million must be paid to Duff Brothers by FFE if the Company decides to pursue the competing offer. The Company also may be required to pay certain out-of-pocket costs and expenses of up to $250,000 to Duff Brothers' affiliates.  The substantial termination fee will ensure that no competing offer will appear, as any competing bidder would essentially pay a premium for the right to provide the shareholders with a superior offer.

58.     The Company has also granted Duff Brothers a Top-Up" option that ensures that Duff Brothers gains the shares necessary to effectuate a short-form merger. Pursuant to the Merger Agreement, if Duff Brothers receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger. In the event Duff Brothers fails to acquire the 90%  required, the Merger Agreement also contains a "Top-

Up" provision that grants Duff Brothers an option to purchase additional shares from the Company in order to reach the 90% threshold required to effectuate a short-form merger.

59.     Moreover, in connection with the Proposed Transaction, Defendants S. Stubbs, R. Stubbs, and Hickerson have entered into tender and voting agreements to tender the shares of common stock they beneficially own into the tender offer. As a result, approximately 12.8% of the outstanding shares of FFE are already locked up in favor of the Proposed Transaction. The tender and voting agreements are a deterrent to potential alternative acquirers.

60.     Moreover, the Company disclosed that it had entered into the Poison Pill Amendment granting a limited exemption only to Duff Brothers to exceed the poison pill's ownership limitations.  As stated in a Form 8-A12B/A filed with the SEC on July 15, 2013:

> **Item 1. Description of Registrant's Securities to be Registered**
>
> On July 12, 2013, the Board of Frozen Food Express Industries, Inc., (the "Company") entered into the Fourth Amendment (the "Amendment") to the Rights Agreement (as defined below) with Registrar and Transfer Company, as Rights Agent. Capitalized terms used and not otherwise defined in this Item 1 have the meaning ascribed to them in the Rights Agreement, dated as of June 14, 2000, between the Company and Registrar and Transfer Company, a successor to Fleet National Bank, as Rights Agent (as amended, the "Rights Agreement").
>
> The Amendment provides, among other things, that none of (i) the announcement of the Merger Events (as defined in the Amendment), (ii) the execution, delivery and performance of the Merger Agreement (as defined in the Amendment) and the acquisition of, or right or obligation to acquire, beneficial ownership of Company common stock as a result of the execution of the Merger Agreement (iii) the conversion of Company common stock into the right to receive the merger consideration under the Merger Agreement or (iv) the consummation of the Merger Events or any other transaction contemplated by the Merger Agreement will cause (x) Duff Brothers Capital Corporation, Duff Brothers Subsidiary, Inc. or any

> of their Affiliates or Associates to become an Acquiring Person, or (y) the occurrence of a Flip-In Event, a Flip-Over Event, a Separation Date or a Stock Acquisition Date under the Rights Agreement. In addition, the Amendment provides that the Rights will expire immediately prior to the effective time of the Merger (as defined in the Merger Agreement), but only if the Merger is completed.

This action effectively precludes any other person from launching a competing bid for FFE in a situation where the directors have decided to sell the Company and its shareholders no longer need the protection of a poison pill. Thus, the Poison Pill Amendment being limited to Duff Brothers lacks a proper corporate purpose and is an unnecessary and unreasonable deal protection device that serves only to insulate the Proposed Transaction from the possibility of a potentially superior alternative bid.

61.     Ultimately, these preclusive deal protection provisions improperly restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

62.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duties
### (Against All Individual Defendants)

63.     Plaintiff repeats all previous allegations as if set forth in full herein.

64.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the public shareholders of FFE and have acted to put their personal interests ahead of the interests of FFE shareholders.

65.     The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to maximize FFE's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

66.     The Individual Defendants have breached their fiduciary duties of loyalty and due care owed to the shareholders of FFE because, among other reasons:

(a)     they failed to take steps to maximize the value of FFE to its public shareholders and took steps to avoid competitive bidding;

(b)     they failed to properly value FFE; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

67.     As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not

receive their fair portion of the value of FFE's assets and will be prevented from benefiting from a value-maximizing transaction.

68.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

69.     Plaintiff and the Class have no adequate remedy at law.

**COUNT II**
**Aiding and Abetting**
**(Against Duff Brothers, and Merger Sub)**

70.     Plaintiff repeats all previous allegations as if set forth in full herein.

71.     As alleged in more detail above, Defendants Duff Brothers, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

72.     As a result, Plaintiff and the Class members are being harmed.

73.     Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)     enjoining, preliminarily and permanently, the Proposed Transaction;

(C)     in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(D)     directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)     awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)     granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all claims so triable.

Dated: July 19, 2013                    Respectfully submitted,


                                        /s/ Joe Kendall
                                        Joe Kendall
                                        Texas Bar No. 11260700
                                        Jamie McKey
                                        Texas Bar No. 24045262
                                        KENDALL LAW GROUP, LLP
                                        3232 McKinney Avenue, Suite 700
                                        Dallas, Texas 75204
                                        Telephone:  214-744-3000
                                        Facsimile:  214-744-3015
                                        jkendall@kendalllawgroup.com
                                        jmckey@kendalllawgroup.com

                                        LEVI & KORSINSKY, LLP
                                        Shannon L. Hopkins, Esq.
                                        30 Broad Street, 24th Floor
                                        New York, New York 10004
                                        Tel: (212) 363-7500
                                        Fax: (212) 363-7171

                                        *Attorneys for Plaintiff*